[L. A. No. 1812. In Bank.—August 19, 1907.]

## A. S. KOYER, Respondent v. C. E. BENEDICT et al., Defendants, and GERTRUDE STULL, Appellant.

MORTGAGE—FINDINGS—EVIDENCE.—In an action to foreclose a mortgage, it is held, upon a review of the evidence, that the findings to the effect that at the time of the execution of the mortgage the mortgagor was the owner of the premises, that the appellant was a subsequent purchaser with knowledge of its existence, and as to the amount of the mortgage indebtedness, were sufficiently sustained.

APPEAL from an order of the Superior Court of Los Angeles County refusing a new trial. D. K. Trask, Judge.

The facts are stated in the opinion of the court.

Gertrude Stull, *in pro. per.*, for Appellant.

Harris & Harris, for Respondent.

LORIGAN, J.—This action was brought to foreclose a mortgage made by the defendant Benedict in favor of plaintiff on March 14, 1900, upon a lot in the city of Los Angeles to secure payment of three thousand two hundred and fifty dollars.

The complaint contained the usual allegations in an action for foreclosure. The defendant Gertrude Stull, who appears to have drafted her own pleadings, and tried the case in her own behalf in the trial court, alone answered, denying specifically all the allegations of the complaint save that she

claimed an interest in the premises and setting up as an affirmative defense the following facts: That immediately prior to the making of the mortgage in question, plaintiff and the defendant Holway were her agents, having under their control with the Title Insurance and Trust Company of Los Angeles eleven hundred and fifty dollars of her money, to be invested by them in the purchase for her of a lot somewhere in the city of Los Angeles, for which lot eleven hundred dollars was to be paid and the balance of fifty dollars to be retained (and the defendant alleges it was retained) by plaintiff; that thereafter plaintiff agreed with defendant to purchase for her the lot described in the mortgage for fifteen hundred and fifty dollars, her eleven hundred dollars, with an additional four hundred and fifty dollars to be loaned her by plaintiff, to be paid for that purpose; that she thereupon notified the Title Insurance and Trust Company to accept the written instructions of said plaintiff and Holway for the purpose of the transfer of said property to her; that thereafter, acting adversely to the interests of defendant and for his own interest, plaintiff carried forward two hundred dollars of her eleven hundred dollars deposited with said Title Insurance and Trust Company, placed therewith thirteen hundred and fifty dollars of his own money, and instructed the trust company to pay over the sum to the owner of the property, one Claybrooke, when a deed was executed by him in favor of defendant; that in depositing said sum of thirteen hundred and fifty dollars instead of four hundred and fifty dollars plaintiff aided, and was accessory to, the withdrawal and misapplication of nine hundred dollars of the eleven hundred dollars intrusted to her agents as the purchase price of said lot; that plaintiff and Holway procured a deed to be executed by Claybrooke to the defendant Benedict; that Benedict then executed the mortgage in question, and subsequently conveyed the lot to the defendant; that Benedict paid no consideration for the deed to himself, but acted solely for the benefit of plaintiff and Holway; that Benedict held the property in trust for her, executed the mortgage without authority from her, and that said mortgage was void.

The issues presented were tried, and the court found that the mortgage was executed by Benedict; that he was the owner of the premises at the time of its execution; that the defendant

Gertrude Stull subsequently acquired title to the lot from him with knowledge of the mortgage; and found against defendant upon all the allegations set up in her affirmative defense. Judgment was entered for the sum of $3,631.92 and costs in favor of plaintiff, and from an order denying her motion for a new trial defendant appeals.

Her attack is directed against the findings in favor of plaintiff, the claim being that none of them were justified by the evidence.

The record on appeal is not the most satisfactory. The evidence on the trial was apparently presented in a rather desultory way, arising, doubtless, from the fact that defendant was her own attorney and not familiar with legal procedure. Exactly on what theory she presented her case in the lower court, or in what particular respect the findings of the court are challenged here, it is difficult to readily perceive.

The position of plaintiff on the trial regarding the mortgage in question was that the lot described in it was purchased for fifteen hundred and fifty dollars by Holway, who desired a deed from Claybrooke to be made to Benedict; that Holway put up two hundred and fifty dollars, plaintiff advancing the remainder of the purchase price,—thirteen hundred dollars,—it being further agreed between them that plaintiff should advance as required an additional nineteen hundred and fifty dollars to pay for the construction of a building to be erected on the lot; that the mortgage was given to secure the amount of the purchase money advanced by plaintiff and to secure the advances to be made for the building. We will discuss this matter later, and mention it now as premising a reference to the claim of defendant relative to the lot described in the mortgage.

In her answer presenting her affirmative defense she alleged that the plaintiff paid, as part of the purchase price of the lot mortgaged, the sum of thirteen hundred and fifty dollars of his own funds, but asserted that, by reason of further allegations in the answer, the entire transaction culminating in the giving of the mortgage was a fraud upon her, perpetrated by the plaintiff and the other defendants, Holway and Benedict, and that the mortgage was therefore void. Upon the trial and here, as we understand her position, it is claimed that eleven hundred and fifty dollars of her money went into the purchase

price of the lot, together with four hundred dollars which she borrowed from plaintiff; that the deed from Claybrooke should have been made directly to her as per agreement; that the deed to Benedict was without any consideration, was unauthorized, and that the mortgage for all purposes for which it was given was equally unauthorized by her and fraudulent and invalid; or, at least, the entire scheme of plaintiff, Holway, and Benedict was a conspiracy to obtain her money after the mortgage was executed and given priority and put it into the lot, either towards the purchase price or to be expended in the construction of the building, and at the same time including it in the mortgage.

We have examined the record carefully and perceive no reason why the findings should be disturbed. The evidence upon all the main issues in the case was, as usual, conflicting. It was for the trial court to determine from the conflict what facts it deemed satisfactorily proven, and an examination of the record shows that sufficient evidence was presented to justify the findings upon which the judgment was based and to warrant the trial court in further concluding that the affirmative defense alleged was not sustained by it.

There was evidence, which was accepted by the court as true, to the effect that plaintiff was in no respect the agent of defendant in the purchase of this property; that he was engaged in selling real estate, and had been requested by defendant to look out for the purchase of a lot for her in Los Angeles; that Holway, one of the defendants, was her agent and had her money under his control; that Holway had given plaintiff fifty dollars of the money of defendant long prior to the purchase of this lot, not as a commission, but as a deposit to be used by him in the event of securing a lot which defendant might wish to buy; that he, plaintiff, had listed with him by Claybrooke the lot described in the mortgage, which he was authorized to sell for fifteen hundred and fifty dollars, and asked defendant if she would purchase it, but she declined to do so. He then tried to dispose of it to several parties without success, until Benedict and Holway agreed to purchase it on the following terms, Holway to pay two hundred and fifty dollars, and plaintiff to advance thirteen hundred dollars to complete the purchase, and plaintiff to take a mortgage upon the lot for three thousand two hundred and fifty

dollars at eleven per cent per annum interest. This mortgage was to secure thirteen hundred dollars of the purchase price advanced by plaintiff, and to further secure an advance of nineteen hundred and fifty dollars to be paid to Holway and Benedict for the purpose of building a small two-story house on the premises according to plans acceptable to plaintiff, the money to be paid out on the construction of the house as it progressed. Holway and Benedict were also to pay plaintiff one hundred dollars commission. These terms for the purchase of the lot by Holway and Benedict were accepted by plaintiff, who paid thirteen hundred dollars, and Holway two hundred and fifty dollars, of the purchase price, and under an arrangement between Holway and Benedict themselves as to who should take the conveyance, it was agreed that Benedict should do so. Accordingly the deed was made from Claybrooke directly to Benedict, and the mortgage in question for three thousand two hundred and fifty dollars, as agreed for, was immediately made by the latter in favor of plaintiff. The evidence warranted the court in finding that up to this time defendant Stull had no interest in the transaction, nor was in any manner connected with it, or, if so, it was by some arrangement with Holway, of which plaintiff knew nothing. It does appear that Holway was at the time the agent of defendant and had the control of her money on deposit with the Title Insurance and Trust Company, and it is no doubt the fact that the sum put up by him towards the purchase price was a portion of it, but the evidence warranted the court in concluding that plaintiff did not know this fact, and did not know that defendant had any interest in the property until he ascertained subsequent to the execution of the mortgage that Benedict had deeded the lot to her. It is true that an escrow order to the Title Insurance and Trust Company was signed by Koyer and Holway, directing payment of the money (it is to be presumed to Claybrooke,—the order does not recite) to be made by the company when it could issue a certificate of title which would show "that the title of said property is vested in Gertrude Stull, free from all encumbrances . . . except a mortgage executed by Charles E. Benedict and wife in favor of A. S. Koyer. . . ." The plaintiff testified that instructions as to the contents of this order were given in the office of the company by Holway; that plaintiff signed it after it was prepared,

without reading it closely, and did not notice any reference in it to the defendant, nor knew at that time that she was concerned in the matter. The court accepted this explanation as reasonable, and it had a right to do so.

It is true also that when plaintiff and Holway got together to arrange for the payment of the purchase price of the lot, Holway, though he had agreed to pay plaintiff two hundred and fifty dollars, was only ready to pay two hundred dollars. Plaintiff insisted that he should put up the additional fifty dollars, and Holway said—so plaintiff testified—"there is $50 more in your hands I let you have"; to which plaintiff replied, "That belongs to Mrs. Stull." And continuing, he testified: "After some more conversation, I turned that money into the Title Insurance and Trust Company." This is the fifty dollars which has heretofore been referred to as paid to plaintiff by Holway as a deposit to be used in the contemplated purchase of some lot for defendant. While these circumstances might raise a suspicion that plaintiff had some knowledge that defendant was connected with the transactions with reference to the purchase of this lot, still it could hardly be sufficient to warrant the court in disregarding the positive statement of plaintiff and Holway that at this time plaintiff knew nothing of her connection with it. This fifty dollars was not included in the mortgage nor involved in the suit to foreclose it.

Added to all this evidence is this further fact, that several agreements were drawn up between Benedict, Holway, and the defendant relative to this lot. Some of them, while they were unsatisfactory to defendant in some particulars, and rejected by her for that reason, all practically contained the same recitals, and all of them contained reference to this mortgage as a recognized subsisting lien on the property. The agreement which was finally executed recited that Benedict had conveyed this lot to defendant; that his purpose in doing so was to secure defendant the payment of eleven hundred and fifty dollars and interest thereon at the rate of ten per cent per annum payable monthly, said sum to be payable only on the sale of the land so conveyed to her; that Benedict, as owner, and Holway, as builder, agreed to erect a two-story frame house of a certain description; that upon the sale of the premises defendant would be entitled to one half of the net profits of the transaction, based on the sum the property might

be sold for "over and above the existing mortgage of $3,250 made by Charles E. Benedict to A. S. Koyer, and over and above the $1,150 advanced by Gertrude Stull, and interest on such sums." This agreement states that she took the conveyance to the lot subject to and with the knowledge of the existence of this mortgage from Benedict to the plaintiff, and no doubt, from the discussion had between herself and Holway and Benedict as to the various agreements which were prepared between them and in which this mortgage was referred to, the defendant was fully aware of the circumstances under which it was given. The agreement as executed was acted upon, and it appears that the defendant received payments of interest on the eleven hundred and fifty dollars mentioned in it, according to its terms. This eleven hundred and fifty dollars, aside from the two hundred and fifty dollars of it which undoubtedly was used by Holway as his advance of the purchase price of the lot, would appear from the evidence to have gone with the amount plaintiff was to advance, and did advance, towards payment for the construction of the house, which cost at least three thousand dollars.

We might pursue this matter further, but think these facts, which the evidence presents, and which the trial court obviously accepted as true, justify the findings as made by it in every particular.

It is claimed, however, that, conceding that the mortgage was a valid lien upon the property, still the evidence is insufficient to support the finding of the court as to the amount due under it. In this regard it is insisted that, as the mortgage was given not only to secure the purchase price advanced by plaintiff, but also to secure the additional advance to be used for the specific purpose of erecting a house upon the lot, and as the plaintiff, after the execution of the mortgage and before any sums were advanced for that purpose, had notice that the agreement in that respect was for the benefit of defendant, he was only entitled to enforce his mortgage to the extent that he had actually made payments for that purpose alone. And it is claimed the evidence does not show that he advanced all the moneys for that purpose which the court found to be due under the terms of the mortgage. But the evidence is uncontradicted that the full amount of money specified in the note and mortgage was paid out by plaintiff

for the benefit of defendant; thirteen hundred dollars of it went into the purchase price, and the rest into the construction of the house on the lot. Defendant does not contend that there was in fact no evidence to show this. Her point is that the evidence upon the subject was too general to be accepted as satisfactory. It is true the statement was a general one. Plaintiff testified that he had paid out the full amount mentioned in the mortgage, less the thirteen hundred dollars, all for the construction of the house. He did not go into details,—did not particularize as to amounts paid, to whom paid, or the character of the work or materials for which payment was made. But, in connection with his general statements, he further testified that he had all the checks with him showing such payments, and they were in fact handed to defendant for examination. She looked over some of them, and cross-examined him as to them, and then practically the inquiry on the subject ended. If defendant questioned the general statement of plaintiff in regard to such payments, she could have pursued the matter in detail and had his vouchers at hand from which to determine how far his general statement was supported by them. Not having done so, she is not in a position to claim that sufficient proof of payment was not made by his general statement.

These are the only points made on this appeal of sufficient merit to require consideration. The order denying the motion of defendant for a new trial was properly made, and is affirmed.

Shaw, J., Sloss, J., Angellotti, J., McFarland, J., and Henshaw, J., concurred.